IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **NINA PALOMBO, JANES DOES 1-2** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-189-MAK** |
| | : | |
| **EYE CANDY LLC** | | |

# MEMORANDUM with POST-HEARING FINDINGS OF FACT and CONCLUSIONS OF LAW

**KEARNEY, J.**                                                                 **January 22, 2024**

Congress and the Delaware General Assembly require Delaware employers pay a minimum wage and overtime wages to their workers. We today address claims by three women working as dancers in a men's entertainment club seeking to be paid statutory-mandated wages under the law. They worked shifts dancing for tips at Whispers entertainment club in 2021 and 2022. The employer did not pay them an hourly wage. The entertainers paid half of their tips to the employer and then tipped the employer's bartender, a disc jockey, security officers, and managers from their share of their earned tips. The company owning Whispers defaulted in responding to the women's Complaint. We then noticed and held a damages hearing on the default. A non-lawyer allegedly affiliated with the owner company listened to the hearing evidence but could not represent the company and did not speak. We evaluated the women's credibility under oath as well as studying calculations of lost wages provided by their counsel. We find the three women are entitled to the wages they proved during our hearing:

## Findings of Fact

1.  Three entertainers working at Whispers in 2021 and 2022 paid a "house fee" or a "license fee" to dance at Whispers on a given schedule.

2.     The amount of the house or license fee increased as a given night progressed: entertainers arriving to perform at Whispers earlier in the evening paid a smaller house or license fee than those arriving later.[1]

3.     Whispers required the entertainers schedule themselves at least one week in advance. Whispers required entertainers commit to performing a minimum number of shifts per week. Whispers required entertainers to work a minimum of six hours per shift. Whispers fined entertainers who scheduled themselves to perform but did not show for their scheduled shift.

4.     Whispers did not pay its entertainers an hourly wage.[2] The entertainers worked for a portion of the tips paid to them by customers with no base hourly rate.[3]

5.     Whispers required customers tip twenty dollars for "regular" dances and one hundred dollars for "VIP" dances.[4] Whispers required the entertainers forfeit customer tips received from dances to the club.[5] Whispers gave the entertainers one-half of the entertainer's gross customer tips at the end of the entertainer's shift.[6]

6.     Whispers required entertainers to pay the house or license fee at the end of the entertainer's shift from the entertainer's one-half split of the customer tips.[7]

7.      The entertainers in turn tipped the bartender, disc jockey, security services, and manager from the entertainer's one-half split of the customer tips either because of the custom in their workplace or their supervisors directed them to pay.[8]

8.     The Delaware General Assembly set a $9.25 minimum wage in 2021.

9.     The Delaware General Assembly set a $10.50 minimum wage in 2022.

*Nina Palombo's work and missed wages at Whispers.*

10.    Nina Palombo worked as an adult entertainer at Whispers from November 2021 until November 2022.[9]

11. Ms. Palombo paid, on average, forty-five dollars in house fees for the shifts she worked at Whispers.[10]

12. Ms. Palombo paid $3,240 in total house fees.[11]

13. Ms. Palombo worked seventy-two shifts at Whispers.[12]

14. Ms. Palombo worked seven hours per shift.[13]

15. Ms. Palombo worked 504 hours at Whispers.[14]

16. Ms. Palombo performed 241 "regular" dances and 138 "VIP" dances during her tenure at Whispers.[15]

17. Ms. Palombo earned $4,820 in tips from "regular" dances and $13,800 in tips from "VIP" dances of which Whispers kept half.[16]

18. Ms. Palombo earned $18,620 in tips in total while working at Whispers.[17]

19. Whispers paid Ms. Palombo $9,310 of her earned tips and kept the remaining $9,310.[18]

20. Whispers's manager Crystal Carr required Ms. Palombo to distribute ten-percent of her one-half split of the customer tips to other Whispers employees.[19]

21. Ms. Palombo tipped $931 to the Whispers staff during her tenure.[20]

### *Jane Doe #1/Sativa's work and unpaid wages at Whispers.*

22. Jane Doe #1 worked at Whispers under the stage name "Sativa."

23. Sativa worked at Whispers from November 5, 2021 until November 17, 2022.[21]

24. Sativa paid, on average, $40 in house fees for the shifts she worked at Whispers.[22]

25. Sativa paid $1,880 in total house fees.[23]

26. Sativa worked forty-seven shifts at Whispers.[24]

27. Sativa worked seven hours per shift.[25]

28. Sativa worked 329 hours at Whispers.[26]

29. Sativa performed 132 "regular" dances and 32 "VIP" dances during her tenure at Whispers.[27]

30. Sativa earned $2,640 in tips from "regular" dances and $3,200 in tips from "VIP" dances.[28]

31. Sativa earned $5,840 in tips in total while working at Whispers.

32. Sativa received only $2,920 of her earned tips and Whispers kept the remaining $2,920.[29]

33. Sativa understood a custom required she tip other Whispers employees as part of the process of signing out for a given shift.[30]

34. Sativa tipped the Whispers staff an average of $20 per shift she worked at Whispers.[31]

35. Sativa tipped the Whispers staff $940 during her tenure at Whispers.[32]

### *Jane Doe #2/Alina's work and unpaid wages at Whispers.*

36. Jane Doe #2 worked at Whispers under the stage name "Alina."

37. Alina worked at Whispers from September 20, 2022 until November 17, 2022.[33]

38. Alina paid an average of $40 in house fees for the shifts she worked at Whispers.[34]

39. Alina paid $1,080 in total house fees.[35]

40. Alina worked twenty-seven shifts at Whispers.[36]

41. Alina worked seven hours per shift.[37]

42. Alina worked 189 hours at Whispers.[38]

43. Alina performed thirty-three "regular" dances and 136 "VIP" dances during her tenure at Whispers.[39]

44. Alina earned $660 in tips from "regular" dances and $13,600 in "VIP" dances.[40]

45. Alina earned $14,260 in tips in total while working at Whispers.[41]

46. Alina received only $7,130 of her earned tips and Whispers kept the remaining $7,130.

47. Whispers "asked" Alina to give tips to other members of the staff.[42]

48. Alina tipped the Whispers staff an average of $20 per shift she worked at Whispers.

49. Alina tipped $540 to the Whispers staff during her tenure.[43]

## Conclusions of Law

1. Congress through the Fair Labor Standards Act allows employees to sue employers for failure to pay minimum wage.[44]

2. Employers failing to pay employees the minimum wage are liable "in the amount of their unpaid minimum wages" and "in an additional equal amount as liquidated damages."[45]

3. Congress through the Tip Income Protection Act, an amendment to the Fair Labor Standards Act, allows employees to sue employers who withhold employees' tips for "the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."[46]

4. The Delaware General Assembly through the Delaware Minimum Wage Act requires employers pay employees a wage rate not less than $9.25 per hour through January 1, 2022, and not less than $10.50 per hour worked between January 1, 2022 and January 1, 2023.[47]

5. Employers violating the Delaware Minimum Wage Act must pay the employee "the full amount of such wages less any amount actually paid to such employee by the employer and for the costs of the action, necessary expenses of prosecution and reasonable attorney's fees."[48]

6. The Delaware General Assembly through the Delaware Wage Payment and Collection Act requires employers pay employees "all wages due within 7 days from the close of the pay period in which the wages were earned."[49]

7. An employer must pay an employee prevailing in a Delaware Wage Payment and Collection Act action the employee's "unpaid wages and liquidated damages[,]" and the employee's "costs of the action, the necessary costs of prosecution and reasonable attorney's fees."[50]

### *Ms. Palombo's tip recovery.*

8. Ms. Palombo earned $18,620 in customer tips for the 241 "regular" dances and 138 "VIP" dances she performed at Whispers.

9. Whispers withheld $9,310 of Ms. Palombo's earned customers tips.

10. Ms. Palombo can recover both the withheld $9,310 in customer tips and an additional $9,310 in liquidated damages under the Tip Income Protection Act.

11. Whispers required Ms. Palombo pay $3,240 in house or license fees from the tips the club did not withhold from Ms. Palombo.

12. Ms. Palombo can recover both $3,240 she paid in compulsory house or license fees and an additional $3,240 in liquidated damages under the Tip Income Protection Act.

13. Whispers manager Crystal Carr required Ms. Palombo distribute $931 of her earned customer tips to other Whispers employees.

14. Ms. Palombo can recover both $931 she paid in compulsory tips to Whispers employees and an additional $931 in liquidated damages under the Tip Income Protection Act.

15. Ms. Palombo can recover $26,962 from Whispers.

16. We cannot award Ms. Palombo unpaid wages absent adduced evidence.

17. Ms. Palombo worked at Whispers from November 2021 until November 2022 but did not adduce evidence of how many hours she worked in 2021 and 2022.[51]

### *Jane Doe #1/Sativa's tip recovery.*

18. Sativa earned $5,840 in customer tips for the 132 "regular" and thirty-two "VIP" dances she performed at Whispers.

19. Whispers withheld $2,920 of Sativa's earned customer tips.

20. Sativa can recover both the withheld $2,920 in customer tips and an additional $2,920 in liquidated damages under the Tip Income Protection Act.

21. Whispers required Sativa pay $1,880 in house or license fees from the tips the club did not withhold from Sativa.

22. Sativa can recover both $1,880 she paid in compulsory house or license fees and an additional $1,880 in liquidated damages under the Tip Income Protection Act.

23. Whispers required Sativa to distribute $940 of her earned customer tips to other Whispers employees during her tenure as part of checking out after her shifts.

24. Sativa can recover both the $940 she paid in compulsory tips to Whispers employees and an additional $940 in liquidated damages under the Tip Income Protection Act.

25. Sativa can recover $11,480 in withheld tips and corresponding liquidated damages from Whispers.

26. We cannot award Sativa unpaid wages absent adduced evidence.

27. Sativa worked at Whispers from November 5, 2021 until November 17, 2022 but did not adduce evidence of how many hours she worked in 2021 and 2022.[52]

### *Jane Doe #2/Alina's tip and unpaid wage recovery.*

28. Whispers failed to pay Alina the Delaware minimum wage of $10.50 for the 189 hours she worked at the club.

29. Alina earned $1,984.50 in unpaid wages working at Whispers.

30. Alina can recover both her $1,984.50 in unpaid wages and an additional $1,984.50 in liquidated damages under the Fair Labor Standards Act.

31. Alina earned $14,260 in customer tips for the thirty-three "regular" and the 136 "VIP" dances she performed at Whispers.

32. Whispers withheld $7,130 of Alina's earned customer tips.

33. Alina can recover both the withheld $7,130 in customer tips and an additional $7,130 in liquidated damages under the Tip Income Protection Act.

34. Whispers required Alina pay $1,080 in house or license fees from the tips the club did not withhold from Alina.

35. Alina can recover both her compulsory house or license fees and an additional $1,080 in liquidated damages under the Tip Income Protection Act.

36. Alina can recover $20,389 from Whispers in unpaid tips, unpaid wages, and liquidated damages.

## Conclusion

Eye Candy LLC d/b/a Whispers owes $26,962 in unpaid tips to Nina Palombo; $11,480 in unpaid tips to Jane Doe #1/Sativa; and, $20,389 in unpaid tips and unpaid wages to Jane Doe #2/Alina.

We now turn to the amount Whispers must pay as "a reasonable attorney's fee" and "costs of the action" to the three entertainers who successfully sued their employer under the for Fair Labor Standards Act.[53] We grant the entertainers leave to promptly move for these fees before final judgment supported by competent evidence (including a possible comparator reasonableness affidavit) of the reasonableness of their attorney's fees and costs.

---

[1] D.I. 82, N.T. Jan. 11, 2024 at 12.

[2] *Id.* at 21, 46–47, 56.

[3] *Id.* at 21, 47, 56.

[4] *Id.* at 21–22.

[5] *Id.* at 26.

[6] *Id.*

[7] *Id.* at 14, 26.

[8] *Id.* at 26.

[9] *Id.* at 42–43.

[10] *Id.* at 45.

[11] *Id.* at 49.

[12] *Id.* at 45–46.

[13] *Id.* at 46.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 47–48.

[17] *Id.* at 51.

[18] *Id.*

[19] *Id.* at 48.

[20] *Id.* at 50.

[21] *Id.* at 54.

[22] *Id.* at 54–55.

[23] *Id.* at 58.

[24] *Id.* at 56.

[25] *Id.* at 54.

[26] *Id.* at 56.

[27] *Id.* at 57–58.

[28] *Id.* at 57.

[29] *Id.* at 58.

[30] *Id.* 58–59.

[31] *Id.* at 59.

[32] *Id.*

[33] *Id.* at 9.

[34] *Id.* at 28–29.

[35] *Id.* at 32.

[36] *Id.* at 20.

[37] *Id.* at 10.

[38] *Id.* at 10–11.

[39] *Id.* at 22–23.

[40] *Id.* at 23–24.

---

[41] Jane Doe #2 swore Whispers failed to produce one week's worth of her tip income. *See id.* at 24. Jane Doe #2 alleged she earned $6,000 in customer tips for the unaccounted–for week. *Id.* But she did not adduce documentary evidence of this omitted tip income. We cannot credit Jane Doe #2 several thousand dollars without documentary evidence. *See Bedell v. CV Special Opportunity Fund, LP*, No. 20-3804, 2023 WL 5152309, at *4 (E.D. Pa. Aug. 10, 2023).

[42] D.I. 82, N.T. Jan. 11, 2024 at 27.

[43] *Id.*

[44] 29 U.S.C. § 216(b).

[45] *Id.*

[46] *Id.* (citing 29 U.S.C. § 203(m)(2)(B)).

[47] DEL. CODE ANN. TIT. 19, §§ 902(a)(1), 902(a)(2).

[48] DEL. CODE ANN. TIT. 19, § 911(a).

[49] DEL. CODE ANN. TIT. 19, § 1102(b).

[50] DEL. CODE ANN. TIT. 19, §§ 1113(a), 1113(c).

[51] *See* D.I. 82, N.T. Jan. 11, 2024 at 42–43.

[52] *Id.* at 54.

[53] 29 U.S.C. § 216(b).